WING et al. v. CHARLEROI PLATE GLASS CO. et al.

(Circuit Court, W. D. Pennsylvania. January 18, 1902.)

No. 8.

1. CORPORATION—INCUMBERED ASSETS—TRANSFER TO OTHER COMPANY—PLEDGE OF STOCK RECEIVED—DIRECTORS—POWER.

Where the stockholders and directors of a solvent corporation, pursuant to a scheme of voluntary dissolution, have, by resolutions, determined that the corporate assets shall be transferred, after payment of debts, to another company, in consideration of stock of the latter, which is to pass to trustees to be distributed proportionately among the stockholders, and the contract between the companies provides for a transfer of the assets of the dissolving company free from incumbrances, the directors have the authority to pass a resolution empowering the trustees to pledge the stock received from the purchasing company to the holders of the dissolving company's mortgage bonds, in order to free the assets of the latter company.

2. SAME—TRUSTEES—FULFILLMENT OF PLEDGE—MISAPPLICATION OF FUNDS.

The action of the trustees in so pledging the stock of the purchasing company, and in afterwards applying the proceeds of sales thereof to the satisfaction of the corporate debts so secured, is not, as against a subsequent judgment creditor, a misapplication of funds.

3. SAME—PRINCIPLE OF PRO RATA DISTRIBUTION—APPLICABILITY.

In view of the initial solvency of the dissolving company, and the resolution of its directors authorizing the pledge of the purchasing company's stock to free the corporate assets from the mortgage lien, the principle of pro rata distribution among creditors does not apply, notwithstanding the other resolutions providing for the payment of debts.

4. SAME — PLEDGED STOCK — SALE — SUBSEQUENT PURCHASE BY TRUSTEE — BREACH OF TRUST.

The purchase by one trustee of stock of the purchasing company after its sale by the trustees to a third person, made in good faith at the suggestion of such third person, and wholly disconnected from the execution of the trust, and not in contemplation when a transfer to the third person was made, will not render the trustee personally liable to unsecured corporate creditors, though the shares were assigned directly to him without passing through the third person's hands.

In Equity. Sur amended bill, answers, and proofs.

Geo. E. Shaw and Knox & Reed, for complainants.
Boyd Crumrine, for respondents.

ACHESON, Circuit Judge. The purpose of the amended bill is to charge the defendants George W. Crouse and William D. Hartupee personally with the plaintiffs' judgment against the Charleroi Plate Glass Company. The answers are responsive to and in denial of all the averments of the amended bill upon which the plaintiffs' case rests. The only witnesses examined by the plaintiffs were the two named defendants, and their testimony sustains the answers. The amended bill does not allege that the Charleroi Plate Glass Company was insolvent at the time it sold its plant and other property to the Pittsburgh Plate Glass Company, or at the time when these defendants entered upon the service of receiving and applying the stock and bonds derived from the sale. The evidence does not show such insolvency. To the contrary, it satisfactorily appears

that the company was then entirely solvent. The sale was voluntary, and made because deemed by the vendor company advantageous to it. It was the confident and reasonable belief of all its directors and stockholders that after payment of all its debts there would remain a large surplus of the consideration realized from the sale for distribution among the stockholders. In that expectation these defendants undertook the discharge of the duties of their appointment.

Their appointment was in this wise: At a meeting of the board of directors of the Charleroi Plate Glass Company held March 26, 1895, the following resolution was adopted:

"Resolved, that the directors of this company recommend to its stockholders at their meeting to be held this day that a resolution be passed appointing George W. Crouse and William D. Hartupee as trustees to receive the shares of stock in the Charleroi Plate Glass Company held by each stockholder, and make the proper exchange for the same in the shares of the Pittsburgh Plate Glass Company."

Accordingly, at a meeting of the stockholders of the Charleroi Plate Glass Company held the same day, the following resolution was adopted:

"Resolved, that the recommendation of the board of directors, suggesting that George W. Crouse and William D. Hartupee be appointed trustees for the transfer of stock, be approved by the stockholders, and that the stockholders of the company be instructed to place their holding of stock in the hands of said trustees, to be exchanged for their proportion of the shares of the capital stock of the Pittsburgh Plate Glass Company after the debts of the said Charleroi Plate Glass Company are paid, and that said trustees shall give each shareholder their trustees' receipt for all stock delivered to them of holdings in the Charleroi Plate Glass Company, and that each shareholder give proper receipt to said trustees for stock delivered to them of the Pittsburgh Plate Glass Company."

At this same meeting of the stockholders the following resolution also was adopted:

"Resolved, that in view of the sale of the property and business of this company to the Pittsburgh Plate Glass Company, with the exception of its cash, book accounts, and bills receivable, that the president be, and he is hereby, authorized and empowered with full authority to close up the affairs of the company, and make pr. per distribution of the remaining assets by dividends to the stockholders of the company, and that he be authorized to employ such assistance as he may deem necessary in performing these duties."

George W. Crouse was the president of the Charleroi Plate Glass Company, and William D. Hartupee was the secretary of the company.

At a meeting of the board of directors of the Charleroi Plate Glass Company held on June 6, 1895, the following resolution was adopted:

"Resolved, whereas, the stockholders and the directors of this company did heretofore appoint George W. Crouse and W. D. Hartupee trustees to act with reference to the exchange of the stock of this company for the stock of the Pittsburgh Plate Glass Company, deliverable to this company in payment of its property; and whereas, certificates representing the stock of the Pittsburgh Plate Glass Company have been issued and delivered in

part, and the residue thereof is ready for issue and delivery upon performance of this company of certain requirements respecting title or incumbrances: Therefore resolved, that the officers of this company be, and they are hereby, authorized, empowered, and directed to transfer upon the books of the Pittsburgh Plate Glass Company to George W. Crouse and W. D. Hartupee, trustees for the Charleroi Plate Glass Company, all the stock of the Pittsburgh Plate Glass Company due or coming to this company as aforesaid, with full authority to said trustees to assign and transfer the said stock to the various persons entitled thereto through or under this company, when and as said trustees shall see fit so to do; and said trustees, pending the liquidation of the company's affairs, are authorized to pledge said stock standing in their name to secure any indebtedness that exists or that may be hereafter created."

Crouse and Hartupee acted under the above-quoted several resolutions adopted by the board of directors and the meeting of stockholders of the Charleroi Plate Glass Company.

By the terms of the agreement of sale between the two plate glass companies, the amount of stock and bonds of the Pittsburgh Plate Glass Company deliverable to the Charleroi Plate Glass Company was as follows, namely: Of stock, $580,000 (par value); of bonds, $441,000. The whole thereof came into the hands of the two named defendants, and the stock and bonds were sold by them from time to time as they could find purchasers. As sales of stock and bonds were made, they were reported to the treasurer of the Charleroi Plate Glass Company, and the proceeds fully and satisfactorily accounted for to and with the company, through its treasurer. These sales resulted in a large loss upon the face value of the securities by reason of depreciation in their market value. The stock realized $324,675; the bonds realized $432,180. The entire proceeds were applied by the defendants Crouse and Hartupee to the debts of the Charleroi Plate Glass Company. Nothing was distributed to or among any of the stockholders.

I am fully satisfied from the evidence that the defendants Crouse and Hartupee sold and disposed of all the stock and bonds intrusted to them at fair and proper sales and for the very best obtainable prices. The charges to the contrary made in the amended bill of complaint are not sustained by the proofs. Crouse was the accommodation indorser of all the outstanding notes of the company about to be mentioned, and obviously it was his interest in his own relief to realize the utmost from the assets of the company. That he was diligent and faithful in all this business is abundantly shown.

Was there any misapplication of the fund? The agreement of sale bound the Charleroi Plate Glass Company to convey its property to the Pittsburgh Plate Glass Company by good and sufficient deeds, free and discharged of all liens and incumbrances. Now, at the date of the agreement of sale, the real estate of the Charleroi Plate Glass Company was incumbered by a mortgage of the company given to secure corporate bonds to the amount of $500,000, which were all then outstanding. Of these mortgage bonds, $31,000 had been used previously to pay a debt owing by the mortgagor company to the Charleroi Coal Company, and all the rest of the bonds were held

by various banks as collateral security for the payment of corporate notes which the Charleroi Plate Glass Company had issued. These notes amounted to over $700,000, and for the payment of all of them the mortgage bonds had been pledged to the holders of these notes. In order to carry out its agreement of sale and to obtain the consideration, it was necessary for the Charleroi Plate Glass Company to lift all these mortgage bonds, and have its mortgage satisfied. To accomplish this, the board of directors of the Charleroi Plate Glass Company passed the above-quoted resolution of June 6, 1895, and, acting under the authority thereby conferred, Crouse and Hartupee pledged the stock of the Pittsburgh Plate Glass Company issued to the Charleroi Plate Glass Company to the banks to secure the corporate notes held by them, and thus, by arrangement with the banks, they were able to lift the pledged mortgage bonds.

It is clear to me that the board of directors had lawful power to pass the resolution of June 6, 1895, and that Crouse and Hartupee were justified in acting under it in the manner in which they did. The company was then solvent, and it had not lost the right to control its affairs and dispose of its assets. The authority conferred by the resoution of June 6, 1895, upon Crouse and Hartupee, as the representatives of the company, was necessary in order to fulfill the company's obligation to its vendee, close the sale of its property, and obtain the proceeds of sale. Without the grant and exercise of that authority, these things could not have been accomplished.

All the proceeds which Crouse and Hartupee realized from the bonds and stock placed in their hands for disposal they applied from time to time as received to the payment of the corporate notes held by the banks, and for which the banks also held the pledged collaterals. Of that application the plaintiffs have no right to complain. Those notes were secured debts, first by the pledge of the mortgage bonds, and then by the authorized pledge of the stock, and they were entitled to preference. These payments had to be made to free the collaterals, and enable the representatives of the company to realize the full proceeds of the sale of its property. What was done was entirely satisfactory to, and is not questioned by, the Charleroi Plate Glass Company. For the entire proceeds received by them, and the application thereof, Crouse and Hartupee accounted to the company. The complainants in and by their bill insist that by virtue of the resolutions of the board of directors and the stockholders it became the duty of Crouse and Hartupee to pay all the creditors without distinction or preference. But, as the company itself was not so bound, I am not able to see that the resolutions relied on imposed any such duty upon Crouse and Hartupee. The rule of equal or of pro rata distribution, however, is altogether inapplicable here, because of the mortgage lien, and the resolution of the board of directors authorizing the pledge of the stock in order to remove that incumbrance, and thus secure to the company the fruits of its sale.

The fund which came to the hands of Crouse and Hartupee proved to be insufficient to pay in full the corporate notes held by the banks

and the accrued interest. There remained a balance of $12,000, which Crouse, as accommodation indorser, had to pay out of his own pocket. This debt to Crouse is unpaid. There are also other unsecured debts of the company unpaid. The unpaid debts (exclusive of the plaintiff's judgment) amount to about $37,000.

I cannot accept the view urged by the plaintiffs that the defendant Hartupee is liable to account in respect to the stock of the Pittsburgh Plate Glass Company he bought from John Pitcairn under the circumstances about to be stated. In the fall of 1897 the market value of the stock of that company had fallen to 50 cents on the dollar. There was then in the hands of Crouse unsold $200,000 (face value) of that stock belonging to the Charleroi Plate Glass Company. Pitcairn offered for this whole block 55 cents, which was five points above the market price. Crouse accepted the offer as the best he could do. The evidence is convincing that in this Crouse acted with good business judgment and in perfect good faith. In the circumstances then existing, he was fully justified in making this sale. The sale to Pitcairn was made in the fall of 1897, but the deliveries of the certificates extended over a considerable period, and were made from time to time as Crouse was able to pay the company's notes and free the pledged stock. Pitcairn bought altogether for himself. Subsequently he suggested to Hartupee, who had become the chief engineer of the Pittsburgh Plate Glass Company, that it would be well for him to have a money interest in the company, and he offered to sell Hartupee $50,000 (face value) of his said stock at the same price (55 cents) he (Pitcairn) had paid. Hartupee accepted this offer, and afterwards got that amount of the stock. This transaction was honest throughout. It was not contemplated when Pitcairn made his purchase. It originated wholly with Pitcairn after his purchase. The two transactions were entirely independent of each other. Hartupee, as well as Pitcairn, acted in perfect good faith. No harm was done thereby to the Charleroi Plate Glass Company or its creditors. It is, I think, unimportant that this stock was not first formally transferred to Pitcairn, and then by him to Hartupee, but that the latter upon orders got old pledged certificates as they were lifted from the banks. The real transaction was a bona fide sale by Crouse to Pitcairn, and a subsequent and independent bona fide sale by Pitcairn to Hartupee. I am of the opinion that upon the proofs the transaction is unimpeachable by the plaintiffs.

The evidence not only shows a full and satisfactory accounting by Crouse and Hartupee to and with the Charleroi Plate Glass Company, but the uncontradicted exhibits attached to the answers to the amended bill disclose in detail the several sales of stock and bonds made by Crouse and Hartupee, together with their receipts and disbursements. It further appears that all the other assets of that company have been applied by it to the payment of its debts. No reason, therefore, exists for our further holding the bill.

Let a decree be drawn in accordance with the foregoing opinion, dismissing the bill and the amended bill, with costs.